KOEGEL SLITTER CO. *v.* EAGLE PAPER CO.

(*Circuit Court, S. D. Ohio, W. D.* February 21, 1891.)

PATENTS FOR INVENTIONS—PAPER-SLITTERS—INFRINGEMENT.

The first claim of letters patent No. 392,262, issued November 6, 1888, to Oscar F. Greenleaf, for improvement in paper-slitting machines, consisting of a revolving shaft having a series of rotary cutters adjustably mounted thereon, a cylindrical bar rigidly supported above said shaft, a series of hangers depending from said bar, each of said hangers being composed of a strap adjustably secured upon the bar and a spring-plate adjustably secured to the strap, and a series of rotary cutters journaled upon said plates, is not infringed by a device having no spring-plates, and whose upper cutters are journaled in rigid, fork-shaped hangers, each having a cylindrical shank, by which it is held in a clamping socket in a two-part collar, which is clamped upon the rigid shaft, from which the upper cutters depend.

In Equity. Bill to restrain infringement of patent.

*Arthur Stem*, for complainant.

*Parkinson & Parkinson*, for defendant.

SAGE, J. The patent in suit is No. 392,262, dated November 6, 1888, and was granted to Oscar F. Greenleaf, assignee of William C. Edwards, for improvement in paper-slitting machines. It was subsequently trans-

ferred to and is now owned by the complainant. It contains six claims, of which the first (the only one alleged to be infringed) is as follows:

"In a machine for slitting paper, a revolving shaft having a series of rotary cutters adjustably mounted thereon, a cylindrical bar rigidly supported above said shaft, a series of hangers depending from said bar, each of said hangers being composed of an upper member consisting of a strap adjustably secured upon the bar, and a lower member consisting of a spring-plate adjustably secured to said strap, and a series of rotary cutters journaled upon the lower members of said hangers, combined and operating substantially as set forth."

The patentee states that his invention relates to—

"Machines in which a series of upper rotary cutters is combined with a series of lower rotary cutters, and with devices for guiding a web of paper between said cutters, for the purpose of cutting or slitting said web into strips of any desired width."

He states, further, that the objects of the invention are—

"To provide novel means for supporting and adjusting the cutters of the upper series in such manner that said cutters can be quickly and easily thrown out of operative engagement with the cutters of the lower series, and can be adjusted relatively thereto, to compensate for wear of their cutting edges, with great accuracy, and to provide means whereby the distance between the several pairs of upper and lower cutters can be reduced, for the purpose of slitting the paper into very narrow strips."

The answer denies (1) infringement; (2) that Edwards was the original and first inventor of the patented machine; (3) avers that it had been in public use and on sale in this country for more than two years prior to the filing of the application for letters patent; and (4) sets up various letters patent as anticipating the invention.

The patentee of the patent in suit was examined as an expert on behalf of the complainant. He testifies that the invention referred to in the first claim consists in the spring-plate made adjustable by the mode of attachment to the projecting stem of the strap, and serving to press the upper cutter against the lower one. He further testifies that by substituting this plate for the coiled spring, and by using the narrow strap, the slitters can be set more closely together, and that the stem from the strap, "having one edge thicker than the other," (or, as it is expressed in the specification of the patent, "the inner face of the stem being inclined slightly towards its front side,") a shear-cutting motion is produced, which insures a clean even cut along both edges of the strips of paper. This testimony is in full accord with the statements contained in the specification of the patent.

The defendant's machine differs from the complainant's in several respects. It is manufactured under and in accordance with a patent granted 26th of February, 1889, to Albert Bess. It has no spring-plate. The upper cutters or slitters are journaled in rigid fork-shaped housings or hangers, each having a cylindrical shank, by which it is firmly held in a corresponding clamping socket in a two-part collar, which is itself clamped upon a rigid shaft, from which the upper cutters depend. It is stated in the specification that when the slitters are sharp and newly

started the axes of the upper ones would be parallel with the axes of the lower ones, and in this condition they would work until so worn as to materially affect the clearance at the cutting points. Then the lower clamp-screw in the two-part collar may be loosened, the housing turned a trifle, and the clamp resecured. This throws the upper slitter out of parallelism with the corresponding lower slitter, and in this manner the faces of engaging slitters may be adjusted for angular engagement to compensate for the loss of clearance. This angular adjustment may be made as often as required. A coil spring encircling the axle of the upper slitter serves to press that slitter toward the lower slitter.

Turning again to the specification of complainant's patent, we find that the patentee sets forth as one of the advantages of his improvement that the upper cutters will be held against the lower ones by the elasticity of the spring-plates, and the degree of pressure can be accurately regulated by lateral adjustment of the straps. He says that he is thus "enabled to avoid the use of spiral springs to press the cutters together, which springs soon lose their elasticity, and have to be renewed." The spiral springs are old. The housings or hangings of the defendant's machine are substantially shown in patent to Koegel, October 23, 1888, (No. 245,-405,) which was put in evidence by defendant. In the patentee's expert testimony he states that the angle at which he sets the slitters in his machine to obtain the shear-cutting motion is stationary or constant, and ready for the work at all times; but that in the Koegel and Bess slitters, "which are similar in construction," this angle has to be set by the machine tenders, and in many instances the setting is wrong, to the injury of the lower slitter and the prevention of the cutting of the paper.

From the above it appears that the defendant's slitter does not contain the elements upon which the patentee, both in his specification and in his testimony, rests his claim to invention, but conforms literally to the construction which the patent represents, and the patentee testifies, it was the object of his invention to exclude. And now, in the face of this showing, the doctrine of equivalents is invoked. That a machine which follows the identical construction condemned and rejected by the patent is to be treated as an infringement simply because it has, in common with the patented machines, some elements that belonged to older machines, on which the patentee was trying to improve, is a proposition so altogether untenable, and in conflict with the elementary principles of patent law, that it would be only a waste of time to discuss it.

The bill will be dismissed, with costs.